# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------

SVETLANA GITERMAN,

                Plaintiff,

      v.

POCONO MEDICAL CENTER, POCONO
HEALTH SYSTEM, and
WHITESTONE CARE CENTER, LLC,

                Defendants.

**No.**

**COMPLAINT**

**JURY TRIAL DEMANDED**

-----------------------------------------------------------------

Plaintiff, SVETLANA GITERMAN ("**Plaintiff**"), by and through her undersigned counsel, EISENBERG & BAUM, LLP and FELLHEIMER & EICHEN, LLP, for her Complaint against Defendants, POCONO MEDICAL CENTER, POCONO MEDICAL CENTER HEALTH SYSTEM, and WHITESTONE CARE CENTER ("**Defendants**"), hereby alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff Svetlana Giterman is a profoundly deaf individual who communicates primarily in American Sign Language ("**ASL**"), which is her expressed, preferred, and most effective means of communication.  Plaintiff brings this action because of Defendants' unlawful discrimination against her and their failure to accommodate her disability. Defendants refused to accommodate Ms. Giterman by failing to provide her with an ASL interpreter or other auxiliary aids and services to ensure effective communication during her treatment at POCONO MEDICAL CENTER and WHITESTONE CARE CENTER.

2.     Due to physical, environmental, and pedagogical factors, many deaf individuals, including Plaintiff, have difficulty acquiring English. Indeed, the median reading level of deaf

high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Despite this, Defendants often forced Plaintiff to communicate in a medical setting using written notes in English, instead of properly accommodating her disability through qualified ASL interpreters.

3.      Lip-reading, the ability to understand the speech of another by watching the speaker's lips, does not provide effective communication for most deaf and hard of hearing individuals. In fact, the upper limits of estimates for lip-reading accuracy, in an ideal one-on-one situation, have been as low as 10% to 30% of words correct. This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language or the speaker's vocabulary, for the reasons set forth above. Despite this, Defendants often forced Plaintiff to communicate in a medical setting using this unreliable and ineffective method, instead of properly accommodating her disability through qualified ASL interpreters.

4.      Video Remote Interpreting ("**VRI**") is a video-telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. VRI is inappropriate in many circumstances, including when the patient has other conditions that impair the patient's ability to utilize the device (*i.e.*, if the patient has a visual impairment, is in a lot of pain, or cannot achieve the proper posture); when there are many people in a room; when staff is inadequately trained to

set up or operate the device; or in situations that are especially complicated or emergent. Despite

this, Defendants often forced Plaintiff to utilize a nonfunctioning VRI, or to use VRI when it was

not appropriate to do so, instead of properly accommodating Plaintiff's disability.

5.      Plaintiff brings this lawsuit to compel Defendants to cease unlawful

discriminatory practices and implement policies and procedures that will ensure effective

communication, full and equal enjoyment, and a meaningful opportunity to participate in and

benefit from Defendants' health care services. Plaintiff seeks declaratory, injunctive, and

equitable relief; compensatory damages; and attorneys' fees and costs to redress Defendants'

unlawful discrimination on the basis of disability in violation of Title III of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* and its implementing regulation, 28 C.F.R.

Part 36; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

### THE PARTIES

6.       Plaintiff SVETLANA GITERMAN brings this action and is an individual

residing at 505 Tallow Drive, Blakeslee, Pennsylvania 18610. Plaintiff is profoundly deaf,

primarily communicates in ASL, and is substantially limited in the major life activities of

hearing and speaking within the meaning of federal anti-discrimination laws.

7.      Defendant POCONO MEDICAL CENTER ("**PMC**") is a Pennsylvania non-

profit corporation that operates a medical facility located in Pennsylvania with it principal place

of business at 206 East Brown Street, East Stroudsburg, Pennsylvania 18301. Defendant PMC is

a place of public accommodation under federal anti-discrimination laws and is a recipient of

federal financial assistance, and is therefore subject to the requirements of Title III of the ADA

and Section 504 of the Rehabilitation Act.

8.      Defendant POCONO MEDICAL CENTER HEALTH SYSTEM is, upon

information and belief, a fictitious name owned by POCONO HEALTH SYSTEM (collectively,

"**PMCHS**"), a Pennsylvania non-profit corporation licensed and conducting business in

Pennsylvania with its principal place of business at 206 East Brown Street, Stroudsburg,

Pennsylvania 18301. Defendant PMCHS is an owner, operator and/or lessor of Pocono Medical

Center and is a recipient of federal financial assistance, and is therefore subject to the

requirements of Title III of the ADA and Section 504 of the Rehabilitation Act.

9.      Defendant WHITESTONE CARE CENTER  is a medical facility operating under

the fictitious name "Whitestone Care Center" owned by, upon information and belief, defendant

WHITESTONE HEALTHCARE GROUP, LLC (collectively, "**WCC**") and located in Pennsylvania

with its principal place of business at 370 White Stone Corner Road, Stroudsburg, Pennsylvania

18360. Defendant is a place of public accommodation under federal and state anti-discrimination

laws and is a recipient of federal financial assistance, and is therefore subject to the requirements

of Title III of the ADA and Section 504 of the Rehabilitation Act.

10.     PMC, PMCHS and WCC are collectively herein the "**Defendants**".

### JURISDICTION & VENUE

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331, as Plaintiff's claims arise out of federal laws.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the

Defendants reside within the jurisdiction of this District, and/or a substantial part of the events

that give rise to the claims occurred in this District, and/or the Defendants have sufficient

contacts with this District to subject them to personal jurisdiction at the time this action is

commenced.

### STATEMENT OF FACTS

13.     On March 8, 2014, Plaintiff broke her ankle while exercising in her home.

14.     Plaintiff visited PMC and repeatedly requested the reasonable accommodation of her disability by requesting an ASL interpreter while she was being treated for her broken ankle.

15.     PMC and PMCHS staff denied Plaintiff's repeated requests for an ASL interpreter.

16.     Plaintiff attempted to communicate with hospital staff through a Video Remote Interpreting ("**VRI**") system, but the VRI repeatedly malfunctioned, and Plaintiff was unable to effectively communicate.

17.     On July 3, 2014, Plaintiff was in an automobile accident and fractured her ankle once again.

18.     After Plaintiff's automobile accident she went to PMC seeking treatment for her fracture.

19.     Plaintiff requested an ASL interpreter multiple times, but PMC and PMCHS staff again denied her requests.

20.     Upon discharge, Plaintiff was transferred to WCC.

21.     Plaintiff was in rehabilitation at WCC from July 4, 2014 until July 6, 2014.

22.      Plaintiff repeatedly requested the reasonable accommodation of her disability by requesting an ASL interpreter, but WCC staff denied her requests.

23.     Defendants did not, at any point, provide Plaintiff with adequate auxiliary aids and services to enable her to effectively communicate with Defendants' staff.

24.     In most instances, effective communication would not have taken place without the aid of a qualified ASL interpreter or other, effective auxiliary aids and services.

25.     Plaintiff was uninformed about her medical condition and treatment due to Defendants' failure and/or refusal to provide effective auxiliary aids and services.

26.     Plaintiff was denied the opportunity to participate in her medical treatment as she was unable to ask questions of Defendants' staff and have them explain her testing, diagnosis, discharge instructions and follow up treatment in a manner in which she could understand.

27.     It is reasonably foreseeable that Plaintiff will continue to visit PMC and WCC, either by choice or necessity, as she lives nearby both facilities.

28.     Based on Defendants' previous and repeated denials of effective communication for Plaintiff, it is reasonably foreseeable that a denial of effective communication will occur again when she returns to PMC and WCC.

29.     Plaintiff would seek Defendants' healthcare services in the future, whether by choice or necessity, due to the proximity of Defendants' medical facilities to her home; but she is deterred from doing so due to the discrimination she has faced and expects to face in the future.

30.     Defendants knew or should have known of their obligations under the ADA and Section 504 of the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with these statutes.

31.     Defendants and their physicians and staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

32.     As a result of Defendants' failure to ensure effective communication with Plaintiff, Plaintiff received services that were objectively substandard and that were inferior to those provided to hearing individuals.

33.     As a result of Defendants' failure to ensure effective communication with

Plaintiff, Plaintiff was deprived of her right to understand her diagnosis and treatment and to provide informed consent.

34.     Defendants intentionally discriminated against Plaintiff and acted with deliberate indifference to her communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

## CLAIM I: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT AGAINST ALL DEFENDANTS

35.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

36.     At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, *et seq*., has been in full force and effect and has applied to Defendants' conduct.

37.      At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Defendants' conduct.

38.     At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing and speaking, and is therefore an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

39.     Defendants own, lease, and/or operate a place of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(F).

40.      Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

41.     Title III of the ADA defines discrimination to include denying participation or

offering unequal or separate benefit to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A).

42.     Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

43.     Federal regulations implementing Title III of the ADA provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)

44.     Federal regulations implementing Title III of the ADA provide that when a public accommodation provides VRI services, it must ensure that the service includes all the following criteria: "(1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter´s face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 C.F.R. § 36.303(f).

45.     Defendants discriminated against Plaintiff on the basis of her disability, in violation of the ADA.

46.     Upon information and belief, the refusal to offer onsite interpreter services is the result of a policy or practice of Defendants to prohibit or impede the use of onsite qualified sign language interpreters without regard to whether other methods will provide effective

8

communication.

47.     As set out above, absent injunctive relief there is a clear risk that Defendants'

actions will recur with Plaintiff and/or other deaf patients or family members.

48.     Plaintiff is therefore entitled to injunctive relief, as well as an award of attorney's

fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common

law.

## CLAIM II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT AGAINST ALL DEFENDANTS

49.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

50.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29

U.S.C. § 794 has been in full force and effect and has applied to the Defendants' conduct.

51.     At all times relevant to this action, the United States Department of Health and

Human Services ("**HHS**") regulations implementing Section 504 of the Rehabilitation Act, 45

C.F.R. Part 84, have been in full force and effect and have applied to the Defendants' conduct.

52.     At all times relevant to this action, Plaintiff has had substantial limitations to the

major life activities of hearing and speaking, and has been an individual with a disability within

the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

53.     At all times relevant to this action, Defendants received federal financial

assistance, including Medicaid reimbursements, and were principally engaged in the business of

providing health care. Therefore, Defendants' medical facilities are a program or activity

receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

54.     Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified

individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

55.     Appropriate auxiliary aids include, but are not limited to, interpreters. 45 C.F.R. §84.52(d)(3).

56.     Defendants discriminated against Plaintiff, solely on the basis of her disability, by denying her meaningful access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

57.     Upon information and belief, the refusal to offer onsite ASL interpreter services is as a result of a policy or practice of Defendant to prohibit or impede the use of onsite qualified sign language interpreters without regard to whether other methods will provide effective communication.

58.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or other deaf patients.

59.     Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

60.     Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

i.      Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have

subjected Plaintiff to unlawful discrimination in violation of Title III of the

Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

ii.   Issue an injunction forbidding Defendants from implementing or enforcing any

policy, procedure, or practice that denies deaf or hard of hearing individuals

meaningful access to and full and equal enjoyment of Defendants' facilities,

services or programs;

iii.   Issue a preliminary and permanent injunction ordering Defendants:

(a) to develop, implement, promulgate, and comply with a policy prohibiting

future discrimination against Plaintiff or other deaf or hard of hearing

individuals by failing to provide effective communication;

(b) to develop, implement, promulgate, and comply with a policy requiring that

when a deaf or hard of hearing individual requests an onsite interpreter for

effective communication, one will be provided as soon as practicable in all

services offered by Defendants;

(c) to develop, implement, promulgate, and comply with a policy to ensure that

Defendants will notify individuals who are deaf or hard of hearing of their

right to effective communication. This notification will include posting

explicit and clearly worded notices that Defendants will provide sign

language interpreters, videophones, and other communication services to

ensure effective communication with deaf or hard of hearing persons;

(d) to develop, implement, promulgate, and comply with a policy to ensure, in

the event the Defendants utilize a Video Remote Interpreting System

("VRI"), that such system has a high-speed Internet connection; a video

screen with appropriate size, position, capture angle, focus, and proximity

to the deaf individual; and appropriate audio quality. When possible, the

equipment should be portable and made available to the patient where the

patient is located, preferably in a private room to minimize distractions and

maintain confidentiality;

(e) to develop, implement, promulgate, and comply with a policy to ensure that

deaf or hard of hearing patients are able to communicate through the most

appropriate method under the circumstances, recognizing that the VRI is

not appropriate in all medical situations;

(f) to create and maintain a list of American Sign Language interpreters and

ensure availability of such interpreters at any time of day or night;

(g) to train all their employees, staff, and other agents on a regular basis about

the rights of individuals who are deaf or hard of hearing under the ADA

and Rehabilitation Act.

(h) to train all their employees, staff, and other agents on a regular basis about

Defendants' policy regarding how to properly use VRI services (including

how to set up the VRI system and how to obtain technical assistance in

case of system malfunction or failure) and how to obtain interpreters when

reasonably requested by deaf or hard of hearing patients;

iv. Award to Plaintiff:

(a) Compensatory damages pursuant to Section 504 of the Rehabilitation Act;

(b) Reasonable costs and attorneys' fees pursuant to the ADA, and Section 504 of

the Rehabilitation Act;

(c) Interest on all amounts at the highest rates and from the earliest dates allowed

by law;

(d) Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all

of the requested relief that a jury may award.

Respectfully submitted,

**EISENBERG & BAUM, LLP**

By: */s/ Eric Baum*
Eric Baum, Esq.
NY Bar ID: 2591618
(Motion for *Pro Hac Vice* to be filed)

By: */s/ Andrew Rozynski*
Andrew Rozynski, Esq.
NY Bar ID:  5054465
(Motion for *Pro Hac Vice* to be filed)

24 Union Square East, Fourth Floor
New York, NY 10003
*Attorneys for Plaintiff*

**FELLHEIMER & EICHEN LLP**

By: */s/ John Jacko*
John J. Jacko, III, Esq.
PA Bar #67477
Two Liberty Place
50 South 16th Street, Suite 3401
Philadelphia, PA 19102
*Attorneys for Plaintiff*