**The Hanchulak Law Offices, P.C.**
**By: Gerald J. Hanchulak,** Attorney I.D. #56320
604 South State Street
Clarks Summit, PA   18411
Phone: (570) 319-6642                    Attorneys for Defendants,
                                         Pocono Medical and
                                         Center & Pocono Health System

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SVETLANA GITERMAN, | |
| | ELECTRONICALLY FILED |
| Plaintiff, | JURY TRIAL DEMANDED |
| vs. | No. 3:16-CV-00402-MEM |
| POCONO MEDICAL CENTER, POCONO HEALTH SYSTEM, and WHITESTONE CARE CENTER | Judge: Mannion |
| Defendants. | |

**BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT OF**
**DEFENDANT'S POCONO MEDICAL CENTER**
**AND POCONO HEALTH SYSTEM**

**I.   Procedural History**

Plaintiff filed a Complaint (Doc. 1) in this matter on March 7, 2016, which moving Defendants timely answered (Doc. 20). On July 5, 2016, Plaintiff filed an Amended Complaint (Doc. 23), which again was timely answered by the moving Defendants (Doc. 25). The Codefendant Whitestone also filed timely answers to the Plaintiff's original Complaint (Doc. 17) and to Plaintiff's Amended Complaint (Doc. 29).

1

Since July of 2016, the parties have undertaken extensive discovery in this matter. Each party has produced an expert report and the defendants have deposed Plaintiff's expert. Discovery in this matter is closed and Defendant's, Pocono Medical Center and Pocono Health System's (PMC), Motion for Summary Judgment is before the Court for disposition.

## II. Factual Background

The Plaintiff in this matter, Svetlana Giterman, is totally deaf since age 9 (Exhibit A P12 L13). Plaintiff claims that in March and July of 2014 PMC, a hospital, failed to provide "auxiliary aids and services" to allow the Plaintiff to effectively communicate about her medical treatment, during two separate visits to the hospital's emergency department (See Doc. 23). Plaintiff's claims are brought pursuant to Title III of the Americans With Disabilities Act (ADA). *42 U.S.C. § 12181, et seq.* and Section 504 of the Rehabilitation Act (RA). *29 U.S.C. § 794*.

On March 8, 2014, Plaintiff fractured her right ankle while exercising at home (Exhibit A P18 L12). As a result, Plaintiff was transported by ambulance to the Pocono Medical Center Emergency Department (Exhibit A P18 L22 –P19 L1). Plaintiff's condition on March 8, 2014, was such that she was not hospitalized over night. At all times during her March 8, 2014, Emergency Department visit Plaintiff was fully aware of her condition and her treatment. The record reflects, that during Plaintiff's March 8, 2014, Emergency Department visit, using a combination of a Deaf Talk Video Remote Interpreting (VRI) services computer provided by PMC and with the aid of her son, Joseph Giterman, who worked as an American Sign Language (ASL) interpreter for 12 years (Exhibit B P8 L11--L24), Plaintiff was able to effectively communicate about her

medical treatment (See Exhibit A P21 L17—P30—L18). By way of example, Plaintiff via VRI, had a conversation with a nurse, wherein the nurse explained to Plaintiff that she had a broken ankle and a soft cast was going to be applied (Exhibit A P25 L3). Prior to having a cast applied Plaintiff knew her ankle was fractured and that a cast was going to be applied (Exhibit A P26 L4). The nurse also discussed with Plaintiff what was going to occur after the cast was applied (Exhibit A P26 L11). Plaintiff fully understood what was going to occur with regard to her right ankle fracture (Exhibit A P26 L15). During her stay on March 8, 2014, Plaintiff fully understood and signed a "Consent to Medical And/Or Surgical Treatment," which is attached to her deposition as exhibit 1 (Exhibit A P30 L18). Finally, with the help of her son, Plaintiff fully understood the discharge instructions provided on March 8, 2014 (Exhibit A P29 L13).

Plaintiff eventually returned to PMC on March 17, 2014, for a pre surgical exam, followed by a March 21st surgery. On March 17th Plaintiff was provided with a live interpreter (Exhibit A P31 L14), with whom she was "very happy" (Exhibit A P32 L20).

The alleged lack of an interpreter during Plaintiff's March 8, 2014 Emergency Department visit did not affect Plaintiff's care in anyway (Exhibit B P29 L24). Plaintiff had a "smooth recovery" from the March 8, 2014, right ankle fracture (Exhibit A P35 L12), which was free of any complications (Exhibit A P35 L20).

On July 3, 2014, Plaintiff was involved in an automobile accident (Exhibit A P25 L23—P36 L2). As a result of the automobile accident, Plaintiff was transported by ambulance to Pocono Medial Center (Exhibit A P36 L17). Again, Plaintiff fractured her right ankle (P38 L9). Again, Plaintiff's condition was emergent (P38 L7). During the July 3, 2014 visit Plaintiff was offered VRI, but claims there was a problem with the Wi-Fi

(Exhibit A P40 L3). Plaintiff's son, who is fluent in ASL was present and interpreted for her at that time (Exhibit A P39 L19). Plaintiff was given medication for the pain and was told by the doctor that she needed surgery (Exhibit A P39 L19). The nurse attending to Plaintiff attempted to get a live interpreter, but was unable to do so (Exhibit A P43 L7). On July 3, 2014, Dr. Sinco, the attending surgeon, explained to Plaintiff that she required an open reduction of her right ankle, which would occur on July 4th and Plaintiff understood Dr. Sinco (Exhibit A P49 L1—L10). Plaintiff was satisfied she understood her condition and the surgery that was planned (Exhibit A P49 L17).

On July 8, 2014, Plaintiff was transferred to Whitestone Care Center for physical therapy (Exhibit A P50 L7—L18).

Plaintiff recovered well and without complications from her July 3, 2014, ankle injury (Exhibit A P53 L10—L15).

### III. Issues

1. Whether Plaintiff's Title III ADA claim must be dismissed because Plaintiff has not indicated "a definitive, uncontested intent to return…" to Pocono Medical Center? **Suggested Answer – yes.**

2. Whether Plaintiff's Section 504 Rehabilitation Act claim must be dismissed because Plaintiff cannot factually support a claim for intentional discrimination? **Suggested Answer – yes.**

### IV. Law and Argument

**Summary Judgment Standard**

Summary judgment is appropriate only where "the moving party has established 'that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.' " *S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 257 (3d Cir.2013) at 256 (quoting Fed.R.Civ.P. 56(a))*. In reviewing a motion for summary judgment, all facts should be viewed "in the light most favorable to the non-moving party" and "all reasonable inferences [should be drawn] in that party's favor." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir.2006)*. Also, in applying this standard, the non-moving party must overcome his own hurdle in order to withstand the motion for summary judgment. *See Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.1985)*. The non-moving party must oppose the motion and, in doing so, "may not rest upon the mere allegations or denials of his pleadings ." *Id.* "[H]is response must set forth specific facts showing that there is a genuine issue for trial." *Id.* "[B]are assertions, conclusory allegations[,] or suspicions" will not suffice. *Id.*

### Title III ADA Claim

"Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available*." Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013). See 42 U.S.C. § 12188(a)* (providing that the remedies available to individuals shall be those set forth in *42 U.S.C. § 2000a-3(a)*, which allows a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act of 1964*); Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)*. "Past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by continuing, present adverse effects." *See Shaika v. Gnaden Huetten Memorial Hospital, 3:15-CV-0294 (M.D. Pa. 2015), quoting Doe v.Nat'l Bd. Of Med. Examiners, 210 Fed.Appx. 157, 159 (3d Cir. 2006)*. To state a basis for a claim for injunctive relief, the complaint must allege that injury to the plaintiff is "certainly

impending." *See Shaika v. Gnaden Huetten Memorial Hospital, 3:15-CV-0294 (M.D. Pa. 2015), quoting Phillips v. St. Mary's Mediacl Center, 2013 WL 1124372, *2(E.D. Pa. March 19, 2013).* The injury must be personal, actual and imminent, and cannot be speculative. *Doe, 199 F.3d at 153.* In order to establish standing for injunctive relief, "the plaintiff must put forth a definitive, uncontested intent to return…" *Anderson v. Macy's Inc. 943 F.Supp.2d 531, 540 (W.D. Pa. 2013).* Even an intention to return without definitive plans will not suffice. *Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351(1992).* In addition to showing that she has definitive plans of returning, a plaintiff "needs to show that she will be injured by not having effective communication in the future." *See Shaika v. Gnaden Huetten Memorial Hospital, 3:15-CV-0294 (M.D. Pa. 2015).*

Plaintiff testified only that it was "possible" she would return to PMC, but only if PMC provided an interpreter (P83 L14). Plaintiff has not at any time since July of 2014, returned to PMC and has no definitive plan to return to PMC.

Additionally, Plaintiff has offered no testimony or evidence that she would be injured by not having effective communication in the future. In fact, Plaintiff has offered no testimony that she was injured by not having effective communication in the past. Plaintiffs testimony about her March and July 2014 visits to the PMC Emergency Department were that she was provided with VRI for ASL interpreting, but that there were technical problems during those visits. Plaintiffs own testimony is that on March 8, 2014, she was provided with VRI (Exhibit A P21 L17) and had a conversation with a nurse, wherein the nurse explained to Plaintiff that she had a broken ankle and a soft cast was going to be applied (Exhibit A P25 L3). Plaintiff complained that the VRI was

6

"blurry and it kept connecting, disconnecting" (Exhibit A P25 L6). Plaintiff testified she "prefer[ed] a live interpreter" (Exhibit A P25 L11). Although there were technical issues during that March 8th visit Plaintiff was never unable to effectively communicate about her medical treatment. Plaintiff was never uninformed as to her condition and treatment.

When Plaintiff returned to PMC on March 17, 2014, for a pre surgical exam, followed by a March 21st surgery, she testified she was provided with a live interpreter (Exhibit A P31 L14), with whom she was "very happy" (Exhibit A P32 L20).

During her July 3, 2014 visit Plaintiff testified there was a Wi-Fi issue with the VRI. Plaintiff has offered no evidence that the alleged Wi-Fi issue was permanent or that it continues to this day.

Plaintiff has offered no evidence that she has any continuing condition that will require treatment at PMC.

Furthermore, PMC had a contract for Video Interpreting Services with Deaf-Talk, Inc. d/b/a DT Interpreting, for ASL VRI services, the original agreement was for a 3 year term, beginning May 21, 2013 (See Exhibit C and D P43 L22). Since 2014, PMC has added additional computers to provide better access to VRI services (Exhibit D P44 L5). PMC also had in effect at all times relevant hereto, a contract with Lehigh Valley Center for Independent Living, to provide live ASL interpreters as needed (See Exhibit E). It is clear that PMC is aware of and attending to its obligations under the ADA.

Plaintiff has not indicated a definitive intention to return to PMC, nor has she shown that she would be harmed if she did return, in the form of not having effective communication in the future. Accordingly, Plaintiff lacks standing to advance her ADA claim. There is no case or controversy with respect to the Plaintiff's ADA claim and it

must be dismissed.

### Rehabilitation Act Section 504

The Rehabilitation Act (RA) prohibits discrimination on the basis of federally funded programs. *Blunt v. Lower Merion School Dist. 767 F.3d at 275 (quoting Ridley School Dist. v. M.R. 680 F.3d 260, 282-83 (3d Cir. 2012))*. Claims under the RA and the ADA are governed by the same legal standard. See *Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274(3d Cir. 2012), McNelis v. Pennsylvania Power & Light Company, 867 F.3d 411 (2017)*.

To prevail, Plaintiff must prove (1) that she is a qualified individual with a disability, (2) she was excluded from participation in or denied the benefits of the hospital's services, programs, or activities, or otherwise discriminated against, (3) on account of her disability. See *Bowers v. National Collegiate Athletic Ass'n 9 F.Supp2d 460, 480 (D.N.J. 1998)*. Under Title III of the ADA, discrimination is prohibited "against the disabled in the full and equal enjoyment of public accommodations. *Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128, 125 S.Ct. 2169, 162 L.Ed.2d. 97 (2005)*. Accordingly, entities that provide public accommodation, in part, must provide auxiliary aids and services to disabled individuals. Id.

To recover compensatory damages, the Plaintiff must show that the exclusion or denial was the result of intentional discrimination. See *Shaika v. Gnaden Huetten Memorial Hospital, 3:15-CV-0294 (M.D. Pa. 2015) (citing Chambers v. Sch. Dist. Of Philadelphia Bd. Of Educ., 827 F.Supp.2d 409, 417(E.D.Pa.2011))*. The Third Circuit Court in *D.E. v. Central Dauphin School Dist., 765 F.3d 260, 269 (3d Cir. 2014)*, held that where a plaintiff seeks compensatory damages as a remedy for violations of the RA

and the ADA, "it is not enough to demonstrate only that the plaintiff has made out the prima facie case [of disability discrimination]" and that "[h]e or she must also demonstrate that the discrimination was intentional." (citation omitted). Further, "[a] showing of deliberate indifference satisfies that standard." Id. (citation omitted). See also S.H. ex rel. Durrell v. Lower Merion School Dist., 729 F.3d 248, 263 (3d Cir. 2013) (Third Circuit held that "a showing of deliberate indifference may satisfy a claim for compensatory damages under §504 of the RA []."). The Third Circuit Court in *D.E., 765 F.3d at 269*, stated: To satisfy the deliberate indifference standard, a plaintiff "must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated ..., and (2) failure to act despite that knowledge*." Id. at 265 (citing Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001))*. "Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person*." Id. at 263 (quoting Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011)(internal quotation marks omitted))*. It does, however, require a " `deliberate choice, rather than negligence or bureaucratic inaction.'*" Id. (quoting Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 276 (2d Cir. 2009))*.

      In the instant matter, it is clear the Plaintiff has a disability, in that she is deaf. However, the record does not support an argument that Plaintiff was denied benefits or otherwise subject to discrimination because of her disability. While Plaintiff contends the interpreter services provided were not ideal and that she "prefer[ed] a live interpreter," Plaintiff herself concedes that she was able to effectively communicate about her medical treatment. Plaintiff fails to offer any evidence that she did not receive full and equal enjoyment of public accommodations, in the form of auxiliary aids and services.

Even if Plaintiff could prove a prima facie case of discrimination, she must also demonstrate that the aforementioned discrimination was intentional. As stated above, a showing of deliberate indifference satisfies that standard.

The Plaintiff's own testimony is that on two occasions there were technical problems with the VRI. On the March 8, 2014 visit the technical problems did not prevent Plaintiff from communicating with the nurse, but she would have preferred a live interpreter. On March 14, 2014 Plaintiff's own testimony was that there was a problem with the Wi-Fi on that date. Plaintiff has offered no evidence that PMC intentionally or by deliberate indifference created the aforesaid technical problems. Deliberate indifference requires a "deliberate choice, rather than negligence or bureaucratic inaction." *D.E. v. Central Dauphin School District, 765 F3d 260(3d Cir.2014)*. Finally, as stated above, PMC had a contract for Video Interpreting Services with Deaf-Talk, Inc. d/b/a DT Interpreting, for ASL VRI services, the original agreement was for a 3 year term, beginning May 21, 2013 (See Exhibit C and D P43 L22). Since 2014, PMC has added additional computers to provide better access to VRI services (Exhibit D P44 L5). PMC also had in effect at all times relevant hereto, a contract with Lehigh Valley Center for Independent Living, to provide live ASL interpreters as needed (See Exhibit E). It is clear that PMC is aware of and attending to its obligations under the ADA.

### V. Conclusion

In the instant matter the Plaintiff was not excluded from participation in or denied the benefits of the hospital's services, programs, or activities, or otherwise discriminated against. The Plaintiff was at all times able to effectively communicate about her medical treatment. The Plaintiff had good, if not perfect outcomes from both of

her emergency department visits to Pocono Medial Center.

The Plaintiff's only remedy under the ADA is injunctive relief. The Plaintiff lacks standing to make a claim for injunctive relief under the ADA because she has not indicated "a definitive, uncontested intent to return…" to Pocono Medical Center. Because the Plaintiff does not have definitive plans to return to PMC, she does not have a case or controversy.

Plaintiff's Section 504 Rehabilitation Act claim must be dismissed because the alleged acts or omissions of PMC, even when viewed in a light most favorable to the Plaintiff, could not be viewed by a reasonable fact finder as intentional, even when applying the deliberate indifference standard. The Plaintiff has no evidence of a deliberate choice on the part of PMC that denied her effective communication.

    Respectfully submitted,

    The Hanchulak Law Offices, P.C.


    By:  s/Gerald J. Hanchulak
         Gerald J. Hanchulak, Esq.,
         Atty ID PA 56320