**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SVETLANA GITERMAN, | : | |
| | : | |
| **Plaintiff** | : | CIVIL ACTION NO. 3:16-0402 |
| | : | |
| **v.** | : | |
| | : | **(JUDGE MANNION)** |
| POCONO MEDICAL CENTER, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

On January 16, 2019, the court issued a Memorandum and Order, (Docs. 88 & 89), granting in part, and denying in part, the motions for summary judgment pursuant to Fed.R.Civ.P. 56, of defendants Pocono Medical Center and Pocono Health System (collectively referred to as "PMC"), (Doc. 51), and of defendant Whitestone Healthcare Group, LLC d/b/a Whitestone Care Center ("WCC"), (Doc. 55). Plaintiff Svetlana Giterman alleged that PMC and WCC discriminated against her due to her hearing disability and that they failed to provide her with "auxiliary aids and services", including an interpreter, to allow her to effectively communicate about her medical treatment at their facilities. The motions for summary judgment of PMC and WCC were granted with respect to plaintiff's claims under Title III of the Americans with Disabilities Act ("ADA"), Count I of plaintiff's amended complaint, (Doc. 23). The motions for summary judgment of PMC and WCC were denied with respect to plaintiff's disability discrimination claim for

damages under Section 504 of the Rehabilitation Act ("RA"), Count II of her amended complaint. The plaintiff's cross-motion for summary judgment, (Doc. 64), was denied in its entirety. Specifically, the plaintiff's motion was denied with respect to her claim against PMC under Title III of the ADA. The plaintiff's motion was also denied with respect to her claim for damages under the RA against PMC and WCC. Further, the plaintiff's claim for compensatory damages under §504 of the RA against PMC and WCC was allowed to proceed to trial.[1]

On March 1, 2019, the plaintiff filed three motions *in limine*, (Docs. 94, 96 & 97). On March 8, 2019, PMC filed one motion *in limine*, (Doc. 101). On March 14, 2019, WCC filed five motions *in limine*, (Docs. 103, 105, 107, 109 & 111).[2]

The motions *in limine* have been briefed and exhibits were submitted.[3] For the following reasons, the motions *in limine* will be largely **GRANTED IN PART** and **DENIED IN PART**.

---

[1]The court scheduled a final pre-trial conference in this case for March 22, 2019, and scheduled the trial to commence on April 22, 2019. (Doc. 90).

[2]Four of WCC's motions *in limine* seek to exclude in some respect portions of the opinions and report of plaintiff's expert, Judy A. Shepard-Kegl, Ph.D., a professor in linguistics. As such, WCC could have simply consolidated these four motions into one motion.

[3]Since the full procedural history of this case as well as the facts were stated in the court's January 16, 2019 Memorandum, they shall not be repeated herein. *See* Giterman, —F.3d—, 2019 WL 21895758 (M.D.Pa. Jan. 16, 2019).

## I.    STANDARD OF REVIEW

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017) (citation omitted). On a motion *in limine*, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id*. Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted); Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." Ridolfi v. State Farm Mutual Automobile Insurance Company, 2017 WL 3198006, *2 (M.D.Pa. July 27, 2017) (citations omitted). Further, "Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id*. (citation omitted).

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017) (citation omitted). "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Id.* (citing Luce v. United States, 469 U.S. 38, 41, 105 S.Ct. 460 (1984)).

3

In considering motions *in limine,* "[t]he Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth." Univac Dental Co. v. Dentsply Int'l, Inc., 268 F.R.D. 190, 196 (M.D. Pa. 2010). This inclusiveness is demonstrated by way of Rule 401's expansive definition of relevant evidence, Rule 402's definition of the admissibility of relevant evidence in sweeping terms, and Rule 403's description of the grounds for exclusion as an exception to the general rule favoring admission of relevant evidence. Id. at 196-97.

Rule 402 expansively permits the admission of all "relevant evidence," defined as "[having] any tendency to make a fact more or less probable than it would be without the evidence," with that fact being "of consequence in determining the action." F. R. Evid. 401. Rule 403 nonetheless permits the court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343 (3d Cir. 2002) (Third Circuit stated that "Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility."). These broad principles define the court's discretion in considering motions *in limine*.

Additionally, the movant has the burden to show that the evidence is

inadmissible on any relevant ground. *See* <u>Leonard v. Stemtech Health Sciences, Inc</u>., 981 F.Supp.2d 273, 276 (D.De. 2013).

## II.    DISCUSSION

Briefly, in this case, "discrimination occurs 'when a hospital fails to provide 'appropriate auxiliary aids and services' to a deaf patient...'where *necessary to ensure effective communication*.'" <u>Bates v. Delmar Gardens North, Inc</u>., 2017 WL 403813256, *7 (E.D.Mo. Sept. 13, 2017) (citing <u>Silva v. Baptist Health S. Fla., Inc.</u>, 856 F.3d 824, 831–33 (11th Cir. 2017) (quoting and adding emphasis to 28 C.F.R. §36.303(c)(1))). "This fact-intensive inquiry focuses on 'whether the deaf patient experienced an impairment in his or her ability to communicate medically relevant information with hospital staff,' regardless of whether Plaintiff suffered any 'actual adverse medical consequences resulting from ineffective communication.'" *Id*. (citing <u>Silva</u>, 856 F.3d at 833). Further, as the court in <u>Bates</u>, *id*., indicated, "[t]he ADA and the RA focus not on quality of medical care or the ultimate treatment outcomes, but on the equal opportunity to participate in obtaining and utilizing services." (citing <u>Silva</u>, 856 F.3d at 834; <u>Argenyi v. Creighton Univ.</u>, 703 F.3d 441, 451 (8th Cir. 2013) (holding that Title III of the ADA and Section 504 of the RA require institutions to "start by considering how [their programs] are used by non-disabled [persons] and then take reasonable steps to provide [a disabled person] with a like experience")). Additionally, "the deaf patient [does not] need to 'articulate what information they were unable to understand or

convey,' as it would be 'exceedingly difficult for a deaf patient to recount a conversation he or she could not hear.'" *Id*. (citing <u>Silva</u>, 856 F.3d at 833, 35). Further, a hospital is not required to "provide all requested auxiliary aids and services," but "[it] must provide 'reasonable auxiliary aids and services to afford [a disabled person] 'meaningful access' or an equal opportunity to gain the same benefit as [her] nondisabled peers.'" *Id*. (citing <u>Argenyi</u>, 703 F.3d at 448-49).

Moreover, 28 C.F.R. §36.303(c)(1)(ii) provides: "The type of auxiliary aid or service [at a public accommodation] necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." Also, "the interpretive agency guidelines accompanying the ADA regulations explain that the type of aids or services necessary for deaf individuals in medical settings may differ depending on the nature and complexity of the treatment provided." <u>Bates</u>, 2017 WL 403813256, *8 (citing 28 C.F.R. Pt. 36, App. A ("Exchange of notes likely will be effective in situations that do not involve substantial conversation, for example, when blood is drawn for routine lab tests .... However, interpreters should be used when the matter involves more complexity, such as in communication of medical history or diagnoses, in conversations about medical procedures and treatment decisions, or in communication of instructions for care at home ....")).

6

The court will first address plaintiff's motions *in limine*.

## 1. Plaintiff's Motion to Preclude HHS Civil Rights Clearance Letter to WCC

Plaintiff's first motion, (Doc. 94), seeks to preclude WCC from introducing any evidence regarding a January 17, 2012 letter it received from the U.S. Department of Health of Human Services ("HHS") which contains a "civil rights clearance." (Doc. 94, Ex. A). WCC received a letter from Luis Wilmot of HHS indicating that based on the compliance documentation supplied by WCC to HHS, HHS would provide a "civil rights clearance for purposes of participating in the Medicare program." Plaintiff seeks to preclude WCC from introducing this letter as evidence that "WCC's policies and procedures pertaining to deaf and hard-of-hearing individuals complied with the requirements of Section 504 of the Rehabilitation Act, and other federal laws." Plaintiff bases her motion on FRE 401, 402 and 403 arguing that the HHS's determination that WCC was entitled to a "civil rights clearance" is not relevant to the jury's determination of whether WCC violated the RA regarding her claims and that it will unduly prejudice her.

The court finds that the letter with WCC's "civil rights clearance" from HHS is relevant to the issues in this case, including WCC's defense to plaintiff's RA claim and to her claim for damages alleging that WCC's acted with deliberate indifference. The court also finds that the letter's probative value outweighs any prejudice to plaintiff from any confusion to the jury

7

insofar as it may believe that WCC's participation in the Medicare program indicates that WCC complied with federal laws and did not violate plaintiff's rights under the RA. WCC can offer evidence that it had polices in place to assist its deaf and hearing impaired patients, including the testimony of its expert as discussed below. In fact, WCC's Rule 30(b)(6) corporate representative, Marlene Sebastianelli, who was responsible for updating and maintaining WCC's policies, testified that WCC receives Medicare and Medicaid funds and that certain requirements had to be met to receive these funds from the government, such as providing effective communication for deaf and hard of hearing patients. She testified that WCC has a policy titled "Auxiliary Aids and Services for People with Disabilities." This policy included deaf and hard of hearing patients. (Doc. 94, Ex. B). Plaintiff argues that Sebastianelli admitted that many of WCC's policies to treat people with disabilities that were submitted to HHS to receive its "civil rights clearance" were out of date, such as the list of qualified interpreters WCC provided to HHS and WCC's contract with East Stroudsburg University to provide free ASL interpreting services. Plaintiff can cross-examine Sebastianelli in these regards.

Here, the issue is whether WCC failed to institute policies or to comply with its policies to ensure effective communication regarding plaintiff and other individuals at its facility who had hearing disabilities and, whether it failed to provide auxiliary aids and services to plaintiff during her rehabilitation at WCC. The HHS letter WCC received is relevant to whether WCC had

8

policies to provide hearing services to hearing impaired individuals and whether its polices were in compliance with HHS regulations regarding Medicare patients. Plaintiff can certainly cross-examine WCC officials and staff, including Sebastianelli and WCC's expert, as to whether WCC's policies were actually followed with respect to plaintiff during her physical therapy when she was an in-patient and, whether the polices WCC represented it had to obtain its clearance from HHS existed and were followed or whether they were "based on blatant misrepresentations and false information", as plaintiff contends. As such, plaintiff's first motion *in limine*, (Doc. 94), will be **DENIED**, and WCC will be permitted to introduce as evidence the letter it received from HHS indicating that it had civil rights clearance for purposes of participating in the Medicare program.

### *2. Plaintiff's Motion to Preclude PMC's Expert Witness Spinelli and Motion to Preclude WCC's Expert Witness Sieminski*

Plaintiff moves to preclude PMC's expert witness, Robert J. Spinelli, from testifying and to preclude PMC from introducing his report as evidence at trial under FRE 702 and FRE 703. (Doc. 96). Alternatively, plaintiff seeks to limit the scope of Spinelli's opinions and to exclude unqualified opinions, speculative inferences and legal conclusions. Plaintiff also moves to preclude WCC's expert witness, Louis R. Sieminski, PHD CCC-A, from testifying and to preclude WCC from introducing his report as evidence at trial. (Doc. 97). The plaintiff alternatively seeks to limit the scope of Sieminski's testimony and

to exclude unqualified opinions, speculative inferences and legal conclusions. Plaintiff argues that Spinelli's and Sieminski's expert testimony fails to meet the standards under FRE 702 and *Daubert.*[4]

The admissibility of expert testimony is governed by under FRE 702, which requires an expert witness to have "specialized knowledge" regarding the area of testimony. The Third Circuit has explained, "[t]he basis of this specialized knowledge can be practical experience as well as academic training and credentials," and "[w]e have interpreted the specialized knowledge requirement liberally." Betterbox Commc'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 327-28 (3d Cir. 2002) (internal citations omitted). The Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. Id. Moreover, Rule 702 "has a liberal policy of admissibility." Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997) .

When faced with a proffer of expert testimony, the court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592. The *Daubert* Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id. at 597. The test of reliability is "flexible," and *Daubert*'s list of

---

[4]*See* Daubert v. Merell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993).

specific factors - testing, peer review, error rates, and "acceptability" in the relevant scientific community - neither necessarily nor exclusively applies to all experts or in every case. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

In performing its gatekeeping function to determine whether an expert's report is relevant and reliable under *Daubert* and Rule 702, "the court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein. . . . Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert are within the sole province of the jury." Walker v. Gordon, 46 F. App'x 691, 695 (3d Cir. 2002) (citing Breidor v. Sears, Roebuck & Co., 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

Additionally, experts can provide an opinion about the ultimate issue in a case, but may not give an opinion tied to any legal conclusion, such as whether a defendant was negligent. Patrick v. Moorman, 536 Fed. App'x 255, 258 (3d Cir. 2013)(citing Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006); United States v. Leo, 941 F.2d 181, 196–97 (3d Cir. 1991)).

Spinelli, D.B.A, M.P.H., M.B.A., B.B.A., is a healthcare consultant and the current Director of the Undergraduate Health Administration Program at the University of Scranton. (Doc. 96, Ex. A). Spinelli conducted an extensive review of the record in this case. Spinelli offers opinions on the following: "(1)

[whether PMC] took necessary administrative steps to provide auxiliary aids and services to ensure effective communication for the deaf and hard of hearing individuals; (2) [whether PMC] had proper contracts in place for Video Remote Interpreting ("VRI") services and live interpreter services, as necessary; and (3) whether the types of services in place at the time [of plaintiff's hospitalizations at PMC], were sufficient to provide effective communication to [plaintiff]." (Doc. 96, Ex. B).

Plaintiff argues that Spinelli's report is based on assumptions and fails to explain any of the methodology to support his conclusions. She also contends that Spinelli opines on the ultimate issues in this case, such as his conclusion that PMC's polices met all of the requirements of the ADA.

Sieminski is a licensed audiologist who was retained by WCC to prepare an expert report. Sieminski also conducted a thorough review of the record in this case, including WCC's polices and the plaintiff's records during her treatment at WCC. Further, he interviewed the plaintiff and formulated an individual assessment of her communication needs and abilities. (Docs. 95-3, 124-1). Sieminski opines that the auxiliary aids WCC provided for plaintiff resulted in effective communication and produced the same level of achievement for plaintiff as a patient without a hearing impairment. He also opines that "[plaintiff's] rights as a handicapped person were not violated."

Plaintiff relies upon Federal Rules of Evidence 702 and 703 to support both of her motions.

Federal Rule of Evidence 702 provides that:

12

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

(a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based upon sufficient facts or data;

(c) the testimony is the product of reliable principles and methods;

(d) the expert has reliably applied the principles and methods reliably to the facts of the case.

The Third Circuit has held that Rule 702 provides "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). The Third Circuit in Elcock*, id.* at 754, held that an "expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury." "The proponent of the expert testimony bears the burden of establishing that the proffered testimony meets each of the three requirements by a preponderance of the evidence." Dalton v. McCourt Elec. LLC, 112 Supp.3d 320, 325 (E.D.Pa. 2015) (citing Padillas v. Stork–Gamco, Inc., 186 F.3d 412, 418 (3d Cir. 1999)).

Fed.R.Evid. 703 provides:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The Third Circuit stated in Walker v. Gordon, 46 Fed.Appx. 691, 694 (3d

Cir. 2002), "[t]he District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*." (citing *Kumho Tire, 526 U.S. at 152-53*." The Court in *Walker*, *id.*, also stated that "*Daubert* requires that, when faced with a proffer of expert testimony, a trial judge determines 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" (citing *Daubert, 509 U.S. at 592, 113 S.Ct. 2786*). "These gatekeeping requirements have been extended to apply to all expert testimony." *Id*. (citing *Kumho Tire, 526 U.S. at 147*.).

Additionally, the Court in *Walker, 46 Fed.Appx. at 694*, stated:

> In accordance with *Daubert*, trial courts are required to apply a reliability analysis to an expert's opinion; that opinion is "reliable" if it is based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (1994) (quoting *Daubert, 509 U.S. at 590*). In other words, the expert must have "good grounds" for his belief. *Id*. at 741-42 (explaining how Rule 702, which governs the use of expert testimony in the federal courts, embodies three distinct substantive restraints on the admission of expert testimony: qualifications, reliability and fit).

The Court in *Walker* provided guidance on the role of the trial court with respect to its gatekeeping requirements. In *Walker, 46 Fed.Appx. at 695*, the Court explained:

> In performing its gatekeeping function and, in particular, in deciding whether an expert's report meets the reliability factor of a *Daubert* and Rule 702 analysis, the District Court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein. To the contrary, the role of the

District Court is simply to evaluate whether the *methodology* utilized by the expert is reliable, i.e., whether, when correctly employed, that methodology leads to testimony helpful to the trier of fact. *See Daubert*, 509 U.S. at 591-93 (noting that the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" and that the trial court's determination "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue"). [FN7] Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert, are within the sole province of the jury. *Cf. Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").

An expert need only have "good" grounds for his opinion. The basis might be imperfect to such a degree that the court would find there is some different conclusion that has stronger evidentiary support, but that does not justify exclusion. In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994).

Plaintiff asserts that Spinelli's report and opinions do not require specialized knowledge beyond the ken of an average juror regarding PMC's standards and policies, and that his recitation of those polices will not assist the jury in determining the issue at hand, i.e., whether PMC took adequate steps to provide her with the necessary aids to ensure effective communication with her about her treatment while she was at the hospital.

Similarly, plaintiff argues that Sieminski's report fails to explain his methodology to support his conclusions, that he merely summarizes her background and favorable portions of WCC's polices, that he misstates the

facts, and that his testimony will not contain any specialized information to assist the jury. She also contends that Sieminski improperly opines on the ultimate issues in this case. Plaintiff further argues that Sieminski lacks the requisite qualifications and specialized knowledge regarding the area of his testimony.

Initially, the court finds that Spinelli is qualified to testify as a healthcare consultant expert based on his credentials and since he clearly possess specialized knowledge and training in this field, greater than the average layman. The court also finds that Sieminski is qualified to offer opinions regarding WCC's polices to assist deaf or hard of hearing patients as well as the auxiliary aids that can be used to communicate with such patients. Thus, Spinelli and Sieminski are qualified to offer opinions concerning PMC's and WCC's standards and policies to assist disabled patients understand their treatment and care. The opinions of Spinelli and Sieminski are also reliable since they are based on the facts of this case and they are relevant to the issues in this case. These experts can also testify about the steps the defendants took to provide auxiliary aids and services to deaf and hard of hearing patients, including the plaintiff, and they can testify regarding the defendants' policies as well as the requirements of the ADA and the RA. However, as stated below, no expert will be permitted to testify as to whether either defendant violated the plaintiff's rights under any federal law, whether the defendants acted with deliberate indifference to the plaintiff and, whether the services provided by either defendant ensured effective communication

16

with the plaintiff during her treatment. Nor will any expert be permitted to testify regarding the issues of whether PMC and WCC discriminated against the plaintiff based on her disability.

The Third Circuit allows "more general qualifications of experts" which "extends to the substantive as well as the formal qualification of experts." Paoli, 35 F.3d at 741. "Thus, an expert can qualify based on a broad range of knowledge, skills, training and experience." David v. Black & Decker (US) Inc., 629 F.Supp.2d 511, 514 (W.D.Pa. 2009). In liberally considering the qualifications of both defense experts, as the Third Circuit requires, *see* Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003), Spinelli and Sieminski have the required specialized expertise based on their knowledge, skill and experience. The court further concludes that no Reports of will be admitted into evidence as direct evidence. Counsel may, of course, use the Reports on cross examination as allowed, for example, pursuant to FRE 612 and 613.

Plaintiff can cross-exam both experts regarding their stated opinions, their methodology and, regarding whether PMC's and WCC's polices were followed in her case. Additionally, plaintiff can question Spinelli about PMC's policies which she contends are not favorable to PMC and whether its policies conflicted with the conduct of PMC's staff taken in her case. Plaintiff can also question Sieminski about WCC's polices she contends were not followed in her case. As such, plaintiff's contentions are not grounds to exclude either Spinelli's or Sieminski's testimony, rather they are matters for cross-

17

examination. An expert need only have "good" grounds for his opinion. Conflicting evidence in the record does not exclude an expert's opinion. The basis might be imperfect to such a degree that the court would find there is some different conclusion that has stronger evidentiary support, but that does not justify exclusion. In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994).

No doubt that "[w]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242, 113 S.Ct. 2578 (1993). However, the existence of conflicting evidence is not a basis to exclude an expert's testimony. ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 290 (3d Cir. 2012). The court finds that Spinelli's and Sieminski's opinions are sufficiently supported by the record and fit the facts of this case and, that they will assist the jury in deciding factual disputes. The respective credibility of Spinelli and Sieminski, as well as the plaintiff's expert, is a question for the jury to decide. *Id.* (citation omitted).

Plaintiff also seeks to exclude portions of Sieminski's opinions and report which she contends are based on inadmissible hearsay, i.e., statements she allegedly made during his interview of her. No doubt that "Fed.R.Evid. 703 permits experts to rely on hearsay in expert reports." Kitzmiller v. Dover Area School Dist., 2005 WL 4147867, *5 (M.D.Pa. Sept. 22, 2005). Additionally, "F.R.E. 703 permits experts to rely on data from three

distinct sources: 1) firsthand observation; 2) admitted evidence; and 3) facts outside the record and not personally observed, but of the kind that experts in their field reasonably rely upon in forming opinions." McLeod v. Dollar General, 2014 WL 463496295, *5 (E.D.Pa. Sept. 16, 2014) (citing Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002) ("If the facts are of the type 'reasonably relied upon' by experts in the particular field in forming opinions or inferences upon a subject, the facts or data need not be independently admissible in evidence."). "However, even if an expert opinion itself is admissible, F.R.E. 703 prohibits the proponent of the opinion from presenting to the jury otherwise inadmissible data upon which the opinion is based, unless its probative value substantially outweighs its prejudicial effect." *Id*. Plaintiff can cross-exam Sieminski regarding his testimony that references any hearsay statements.

Finally, while Spinelli and Sieminski cannot testify as to an ultimate issue which the jury must decide, they can testify about PMC's and WCC's polices and conduct in this case and, about the applicable requirements of the ADA and the RA. The jury will then determine whether PMC and WCC violated the plaintiff's rights under federal law and whether PMC and WCC provided effective communication to the plaintiff during her treatment at their facilities. It will also be for the jury to decide whether PMC and WCC acted with deliberate indifference to the plaintiff's rights. As such, Spinelli and Sieminski will not be allowed to testify regarding any legal conclusions about the stated issues which are for the jury to decide. Thus, the court will grant

plaintiff's motion to exclude any opinions of Spinelli and Sieminski as to what plaintiff actually required to comprehend her treatment at PMC and WCC, and regarding the issues of whether the accommodations provided by PMC and WCC enabled the plaintiff to engage in effective communication with their respective staff. Also, the jury will decide whether PMC and WCC discriminated against the plaintiff in violation of federal law. Indeed, none of the experts, including plaintiff's expert, Judy A. Shepard-Kegl, PH.D., will be allowed to testify regarding the above stated issues.

Thus, plaintiff's second motion *in limine*, (Doc. 96), to exclude the expert testimony and report of Spinelli will be **GRANTED IN PART** and **DENIED IN PART**. Further, plaintiff's third motion *in limine*, (Doc. 97), to exclude the expert testimony and report of Sieminski will be **GRANTED IN PART** and **DENIED IN PART**.

### 3. Defendant WCC's Motion to Preclude Plaintiff from Introducing Evidence Regarding a "Golden Rule" Argument

WCC filed a motion *in limine* to preclude under FRE 403 the plaintiff from introducing any evidence or statements regarding a so-called "Golden Rule" argument, i.e., an argument suggesting that the jury put themselves in the place of the plaintiff in order to appeal to the passion and sympathy of the jury. (Doc. 105). No doubt that such evidence is clearly inadmissible. *See* Austin v. Hill, 2014 WL 3054268 (E.D.Pa. July 7, 2014) (citing Waite v. Neal, 918 F.Supp. 133, 134 (E.D.Pa.1996) ("remarks which are not supported by

20

the evidence and which are designed to appeal to the jury's prejudice or passion such as the golden rule argument are also improper ...")). In fact, the court's charge to the jury will instruct them that they must perform their duties without bias or prejudice as to any party and, that they should not be guided by sympathy, prejudice, or public opinion. The court also instructs the jury that they are to consider only the evidence in the case and that the statements of counsel are not evidence. *See* Edwards v. City of Philadelphia, 860 F.2d 568, 575 (3d Cir. 1988).

In any event, plaintiff states that WCC's motion is unfounded and that "[she] does not and has never expressed an intent to introduce nor suggest a 'golden rule' argument before the jury."[5]

Thus, WCC's motion *in limine*, (Doc. 105), to preclude the plaintiff from introducing any evidence regarding a "Golden Rule" argument will be **GRANTED** as unopposed.

### 4. Defendants' Motions to Exclude Plaintiff's Expert Witness Shepard-Kegl

The court will now jointly consider the five remaining motions of PMC and WCC to exclude entirely or to limit the testimony of the plaintiff's expert

---

[5]WCC is reminded that not seeking and filing a certificate of concurrence or non-concurrence with its motion, needlessly wasted the court's and plaintiff's time in addressing this motion. Hopefully, in the future counsel will adhere to the rules related to seeking concurrence/non concurrence of this court.

witness in linguistics, Shepard-Kegl. Since the court has stated above the applicable standards with respect to the admissibility of the testimony of an expert witness, they shall not be repeated.

At the outset, the court finds that Shepard–Kegl is qualified to offer opinions on the issues in this case, that her opinions are reliable, and that her testimony fits and will assist the jury regarding plaintiff's communication abilities and interpretation needs during her treatment at PMC and WCC. Shepard–Kegl will offer expert testimony about plaintiff's ASL skills, her need for an ASL interpreter to communicate when she is receiving medical treatment, and her reading, writing and lip-reading abilities. Shepard–Kegl will also provide testimony about the auxiliary aids used in this case.

The court has found federal district courts in four other similar cases which found that Shepard–Kegl was qualified as an expert to opine on issues similar to the ones in the instant case and, cases in which she used the same methodology she used in this case. <u>Bates</u>, 2017 WL 403813256, *5 (citing <u>Saunders v. Mayo Clinic</u>, 2015 WL 774132, at *2 (D.Minn. Feb. 24, 2015); <u>Me. Human Rights Comm'n v. Sunbury Primary Care, P.A.</u>, 770 F. Supp. 2d 370, 390-93 (D.Me. 2011)); *see also* <u>Cadoret v. Sikorsky Aircraft Corp.</u>, 2018 WL 3545204 (D.Conn. June 1, 2018) (deaf plaintiff alleged his employer discriminated against him in violation of ADA and RA by failing to provide sign language interpreter to allow him equal access to privileges and benefits of employment, and court allowed Shepard–Kegl to testify as an expert about plaintiff's work environment, work needs, and efficacy of the employer's

accommodations).

In fact, the *Bates* case is directly on point with this case and involved claims under the ADA and the RA similar to the ones in this case. The court in *Bates* allowed Shepard–Kegl to testify as an expert about the communication abilities and the interpretation needs of the plaintiff, who was deaf, when she was being treated at the defendants' skilled nursing facilities. The court in *Bates* also allowed Shepard–Kegl to testify regarding her opinions as to "the difficulties Plaintiff would have had in communicating during her stay at Defendants' facilities without an ASL interpreter, and the limited utility of Plaintiff's lipreading and written or spoken English skills for communication access under these circumstances, as compared to ASL. " *Id.* at *9.

The court has reviewed Shepard–Kegl's credentials, as both a linguistics professor at the University of Southern Maine and as an expert witness in other federal cases, as well as her report, and it will allow her to testify about the difficulties plaintiff would have had in communicating with the staff at PMC and WCC under the facts of this case without the benefit of an ASL interpreter. *See id.* Shepard–Kegl's opinions are largely based on her in-person individualized assessment of plaintiff's communication abilities and needs. Further, insofar as PMC and WCC challenge the facts upon which Shepard–Kegl based her opinions and argues that "[she] knows nothing about the facts of this case" and, that "[she] arrives at opinions detached from the facts", as the court held with respect to the defendants' experts, "[a]s a

general rule, the factual basis [or lack thereof] of an expert opinion goes to the weight of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Id*. at \*10 (quoting First Union Nat'l Bank v. Benham, 423 F.3d 855, 862 (8th Cir. 2005)).

Additionally, as the court determined with respect to the defendants' experts, no expert, including Shepard–Kegl, will be permitted to testify regarding any legal conclusions or about the ultimate issues that the jury must decide. Thus, the court is granting, in part, the plaintiff's motions, as well as the defendants' motions, and will exclude all expert opinions "as to whether Plaintiff 'needed' an ASL interpreter during her stay at Defendants' facilities, whether the accommodations provided by Defendants ensured 'effective' communication, [whether the defendants acted with "deliberate indifference" to the plaintiff], and whether Defendants 'discriminated' against Plaintiff." *Id*. (citing Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1213-14 (D.C.Cir. 1997) (holding that while "[i]t may well be permissible for an appropriate expert to testify as to the difficulty [a deaf individual] would have communicating with [the defendant] under the circumstances ... [and] for an appropriate expert to testify concerning the relative merits of alternative forms of communication," it was error to allow an expert to testify as to legal conclusions or invoke "legal term[s] of art" under the ADA, such as "whether a particular form of communication [was] 'as effective' as another")).

The court also finds no merit to the attacks by defendants on the methodology used by Shepard–Kegl in her report, including her methodology

used to determine the plaintiff's reading level. As the court in *Bates, id.*, explained:

> A review of Dr. Shepard–Kegl's expert report and deposition reveals that she relied on standard materials in her field in forming her methodology, has published portions of her methodology, has applied the same methodology to assess the communication needs and abilities of approximately 300 individuals, and applied her methodology to Plaintiff by means of an extensive in-person assessment. There are sufficient indications of reliability here. *See* Ulibarri v. City & Cty. of Denver, 2011 WL 2559838, at *8 (D.Colo. June 28, 2011) (rejecting an assertion that an expert opinion regarding a deaf individual's communication abilities should be excluded on the ground that it applied methodology that had not been tested or subject to peer review or known error rates, because the expert "testified that the method she used ... relied on the types of data typically used in her field, including accepted tests normed for the deaf population," even if the expert had not personally interviewed the individual); *see also* Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (holding that "*Daubert*'s list of specific factors," including testing, peer review, error rates, and acceptability in the relevant scientific community, "neither necessarily nor exclusively applies to all experts in every case").

Additionally, to the extent that PMC and WCC move to preclude Shepard-Kegl from testifying about many portions of her lengthy report which they contend contain irrelevant evidence, the defendants can raise objections at trial based on relevancy during Shepard-Kegl's testimony, if appropriate. This court will not parse through every page of Shepard-Kegl's report to determine relevancy before she even testifies as it remains to be seen what her testimony will be.

Therefore, PMC's motion *in limine* to exclude entirely or to limit the testimony Shepard-Kegl, (Doc. 101), will be **GRANTED IN PART** and

**DENIED IN PART**. Further, WCC's motions *in limine* to exclude entirely or to limit the testimony Shepard-Kegl, (Docs. 103, 107, 109 &111), will be **GRANTED IN PART** and **DENIED IN PART**.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion *in limine*, (Doc. 94), to preclude WCC from introducing evidence it received a civil rights clearance letter from HHS is **DENIED**. Plaintiff's motion *in limine*, (Doc. 96), to exclude the expert testimony and report of Spinelli is **GRANTED IN PART** and **DENIED IN PART**. Further, plaintiff's motion *in limine*, (Doc. 97), to exclude the expert testimony and report of Sieminski is **GRANTED IN PART** and **DENIED IN PART**.

WCC's motion *in limine*, (Doc. 105), to preclude the plaintiff from introducing any evidence regarding a "Golden Rule" argument is **GRANTED** as unopposed.

PMC's motion *in limine* to exclude entirely or to limit the testimony Shepard-Kegl, (Doc. 101), is **GRANTED IN PART** and **DENIED IN PART**.

WCC's motions *in limine* to exclude entirely or to limit the testimony Shepard-Kegl, (Docs. 103, 107, 109 & 111), are **GRANTED IN PART** and **DENIED IN PART**.

A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: April 2, 2019**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0402-02.wpd

27